UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANN C.,[1]

                                                            Plaintiff,

                                                                                                Case # 18-CV-1291-FPG

v.

                                                                                                DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                            Defendant.
_____

## INTRODUCTION

Plaintiff Ann C. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 16. For the reasons that follow, the Commissioner's motion is GRANTED, and Plaintiff's motion is DENIED.

## BACKGROUND

In 2013, Plaintiff applied for DIB under Title II of the Act with the Social Security Administration (the "SSA"). Tr.[2] 13, 514. She alleged disability since June 22, 2012 due to carpal tunnel, cervical spine impairment, lesion ulnar nerve, bursitis bilateral, contusion elbows, tenosynovitis, shoulder impairments, and thyroid disease. Tr. 13, 16, 610. In April and May 2018,

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security opinions, *available at* https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify the plaintiff using only her first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 5.

1

Plaintiff appeared and testified at hearings before Administrative Law Judge Mary Mattimore ("the ALJ"). Tr. 13, 25. At the second hearing, a vocational expert ("VE") and a medical expert, John F. Kwock, M.D., also testified. Tr. 13. On May 29, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. 13–25. On September 13, 2018, the Appeals Council denied Plaintiff's request for review. Tr. 1–3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not the Court's "function to determine *de novo* whether plaintiff is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks and brackets omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 404.1520(a). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the

claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii), (c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(a)(4)(iii). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations caused by his or her collective impairments. *See id.* § 404.1520(a)(4)(iv), (e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(a)(4)(v), (g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity from her application date to May 31, 2016 (from June 1, 2016 through the date of the ALJ's decision, the ALJ found that Plaintiff had engaged in substantial gainful activity). Tr. 16. At step two, the ALJ found that Plaintiff had three severe impairments: mild cervical degenerative disc disease, bilateral shoulder impingement, and bilateral carpal tunnel syndrome. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 17.

Next, the ALJ determined that Plaintiff had the RFC to perform light work with certain limitations. Tr. 18. Specifically, the ALJ found that Plaintiff could: occasionally reach overhead bilaterally and constantly reach in all other directions bilaterally; occasionally crawl; frequently finger, handle, and feel bilaterally; and frequently push/pull bilaterally. *Id.* The ALJ also concluded that Plaintiff could never work at unprotected heights or near dangerous or heavy moving machinery. *Id.* At steps four and five, the ALJ found that Plaintiff was capable of performing her past relevant work as a "Central Office Repairer" and a "Trouble Locator Test Desk" and that there were other jobs that existed in significant numbers in the national economy that she could perform. Tr. 23–21. The ALJ therefore concluded that Plaintiff had not been disabled from June 22, 2012 through the date of the decision. Tr. 25.

**II.    Analysis**

Plaintiff argues that the ALJ's determination that she could handle, finger, and feel on a frequent basis was not supported by substantial evidence and that Plaintiff's medical appointments

4

would have precluded her from maintaining minimal standards of attendance. ECF No. 9-1 at 1, 18–24. The Court disagrees.

### A. *Handle, Finger, and Feel Limitation*

Plaintiff argues that the ALJ's decision that she can handle, finger, and feel on a frequent basis is not supported by substantial evidence in the record. ECF No. 9-1 at 18–23. In discussing this limitation, the ALJ specifically cited the hearing testimony of Dr. Kwock, who served as a medical expert, the opinion of Samuel Balderman, M.D., a state agency consultative examiner, and the opinion of R. Keith Felstead, M.D., Plaintiff's primary care physician. Tr. 13, 22–23. The Court finds that the ALJ's decision was supported by substantial evidence.

The ALJ was entitled to rely on the opinion of Dr. Kwock to support the ALJ's RFC analysis. *Hancock v. Barnhart*, 308 F. App'x 520, 521 (2d Cir. 2009) (summary order) (holding that ALJ's decision to credit the opinion of a medical expert over that of a treating physician was supported by substantial evidence); *Cruz v. Comm'r of Soc. Sec.*, No. 16-CV-965, 2018 WL 3628253, at *6 (W.D.N.Y. July 31, 2018) ("[A]n ALJ is free to give great weight to the opinion of a non-examining medical expert as long as their opinions are supported by substantial evidence." (internal quotation marks omitted)). Plaintiff argues that the ALJ could not rely on Dr. Kwock's finding because Dr. Kwock testified that he made the "assumption" that two carpal tunnel releases performed on Plaintiff were successful. ECF No. 9-1 at 19–20. Dr. Kwock did state that he was "making the assumption that [Plaintiff's bilateral carpal tunnel releases] w[ere] successful and . . . the symptoms and findings for the carpal tunnel syndrome in both her hands were resolved with the operation." Tr. 43–44.

This "assumption" does not somehow invalidate the ALJ's reliance on Dr. Kwock's opinion. Dr. Kwock testified at length regarding Plaintiff's ability to handle, finger, and feel. He

5

testified that he reviewed the relevant medical evidence and that he had sufficient evidence to opine as to Plaintiff's medical status. Tr. 40–41. He concluded that Plaintiff was limited to "frequent" "[h]andling, feeling, pushing and pulling with the arms" bilaterally. Tr. 46.

Dr. Kwock made clear that his analysis was based on Plaintiff's "physical examinations" that reported normal hand function. Tr. 43–44. He noted that there was no indication that her condition did not resolve with surgical treatment, as it would for most individuals. Tr. 48–49. Dr. Kwock specifically cited Plaintiff's consultative examination with Samuel Balderman, M.D., on September 18, 2013. Tr. 43, 882–85. Dr. Balderman reported that Plaintiff's "[h]and and finger dexterity [were] intact" and she had "[g]rip strength 5/5 bilaterally." Tr. 884. Dr. Balderman further examined Plaintiff on August 24, 2017 and reported the same findings with respect to hand and finger dexterity and grip strength. Tr. 1299–01. Dr. Kwock also cited Plaintiff's consultative examination with Michael Rosenberg, M.D. on August 10, 2015. Tr. 43–44, 47 1131–35. Dr. Rosenberg reported that Plaintiff's "[h]and and finger dexterity [were] intact;" that she was "[a]ble to pick up small objects bilaterally;" that she had "[g]rip strength 4+/5 bilaterally;" that she was "[a]ble to zip, button, and tie;" that she had full range of motion in her wrists and fingers bilaterally; and that, although she had "[d]ecreased sensation [in her] right palm, she had "[n]ormal sensation of digits right and left hand." Tr. 1133.[3]

Dr. Kwock also discussed what he described as a normal EMG finding in the upper extremity. Tr. 44–45, 786. He further generally cited various orthopedic treatment records, which

---

[3] Plaintiff argues that this Court may not affirm the ALJ's decision based on the opinion of Dr. Rosenberg and several other medical opinions in the record. ECF No. 21 at 4–5. These opinions ostensibly support the ALJ's decision, but the ALJ did not explicitly rely on them in evaluating Plaintiff's ability to handle, finger, and feel. Although Plaintiff is correct that this Court may not affirm the ALJ's decision based on the Commissioner's *post hoc* rationalizations, *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020), Dr. Kwock specifically cited Dr. Rosenberg's examination in his testimony as support for his opinion.

intermittently reference Plaintiff's capacity to use her hands. Tr. 47, 737–881, 1039–40; *see, e.g.*, Tr. 743, 750, 774–75 (noting that Plaintiff is limited in gripping/grasping but that she could use her hands for simple grasping and fine manipulation), 801 (noting 5/5 strength in all intrinsic and extrinsic muscle groups in both hands). Accordingly, Plaintiff is incorrect; Dr. Kwock's opinion was not based on an assumption.

Dr. Kwock also acknowledged that, in December 2013, Andrew C. Matteliano, M.D., reported Plaintiff had "positive Tinel's signs over both wrists," Tr. 910–12, but reported that "outside of that particular reference," there is "no other evidence in this record to suggest that the carpal tunnel releases did not" have the intended effect. Tr 44. Plaintiff's counsel at the hearing further cross-examined Dr. Kowck regarding allegedly conflicting documents in the record, such as those indicating Plaintiff complained of her condition worsening after her surgeries. Tr. 50–57. Dr. Kwock relayed that, although Plaintiff made such complaints, there were conflicting reports in the record and her complaints were too general to be attributed to carpal tunnel syndrome. Tr. 51–52.

Plaintiff now criticizes Dr. Kwock's failure to specifically discuss Dr. Matteliano's reports of positive "Tinel's signs" over her wrists in January, February, and March of 2015. Tr. 1223, 1225, 1228. Plaintiff's counsel did not raise this issue with Dr. Kwock on cross-examination. Although the Court sees no reason why these later reports of "Tinel's signs" would not also "suggest that the carpal tunnel releases did not" have the intended effect, Tr. 44, Plaintiff has failed to marshal authority for the proposition that this apparent oversight completely invalidates Dr. Kwock's opinion. *See Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) (noting that an ALJ is not obligated to "reconcile explicitly every conflicting shred" of evidence). Dr. Kwock's opinion was otherwise supported by the substantial evidence discussed throughout his testimony.

7

Even if, however, the ALJ was, for some reason, prohibited from giving Dr. Kwock's opinion any weight, the ALJ also relied on the opinion of Dr. Balderman. "[I]t is well-settled that a consulting . . . examiner's opinion may be given great weight and may constitute substantial evidence to support a decision." *Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018). Plaintiff argues that the ALJ and Dr. Kwock could not rely on Dr. Balderman's assessment because he failed to perform a carpal tunnel examination. ECF No. 9-1 at 20. Plaintiff cites Dr. Kwock's testimony that the examination did not include "a formal carpal tunnel examination." Tr. 44. Dr. Balderman, however, reported that Plaintiff's "[h]and and finger dexterity [were] intact" and she had "[g]rip strength 5/5 bilaterally" and opined that Plaintiff did not have any specific limitation with respect to handling, fingering, and feeling. Tr. 1300–01. Plaintiff cites no authority, legal or medical, that this opinion was insufficient to support the ALJ's RFC finding absent a formal carpal tunnel examination.

Finally, Plaintiff criticizes the ALJ's "reliance" on Dr. Felstead's opinion. ECF No. 9-1 at 21. The ALJ, however, is clear that she only relied on the opinion in finding that Plaintiff had some limitation in her ability to handle, finger, and feel. The ALJ rejected Dr. Felstead's opinion regarding the degree of that limitation. Tr. 22

On a check-box form, Dr. Felstead indicated that Plaintiff could handle, finger, and feel on an occasional, rather than a frequent, basis. Tr. 1311. The ALJ specified that she was giving Dr. Felstead's opinion only limited weight "because other evidence of record does not support the limitation intensity the doctor indicated." Tr. 22. Accordingly, the ALJ simply declined to find that the degree of limitation opined by Dr. Felstead was supported by the record, a finding the ALJ was entitled to make. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued

8

opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) (holding that an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole").

It was up to the ALJ to resolve and weigh conflicting evidence. Plaintiff has identified evidence that conflicts with the ALJ's RFC determination regarding her ability to handle, finger, and feel, but has failed to show that the ALJ's determination was not supported by substantial evidence. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (when the court reviews a denial of disability benefits it must "defer to the Commissioner's resolution of conflicting evidence"); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."); *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) ("[W]hether there is substantial evidence supporting [Plaintiff]'s view is not the question here; rather, [the Court] must decide whether substantial evidence supports *the ALJ's decision*."). Here, the ALJ's determination regarding Plaintiff's ability to handle, finger, and feel was reasonable and supported by substantial evidence.

  *B.*  *Attendance*

Plaintiff asserts that the ALJ failed to account for excessive absences she would have accumulated during the relevant period due to medical appointments. ECF No. 9-1 at 23–24. Plaintiff's argument is premised entirely on the assumption that, because Plaintiff had ninety-seven medical appointments from June 2012 through May 2016, she would have exceeded the maximum absenteeism that an employer would tolerate during that period (which the VE testified was less than one day per month). ECF No. 9-1 at 23–24 (citing Tr. 69). Plaintiff "calculates" that she would have needed to miss an average of two days per month during the relevant period. ECF No.

9

21 at 8. Plaintiff, however, fails to cite any evidence that her appointments would have required her to miss an entire day of work. As the Commissioner notes and other courts have recognized in rejecting similar arguments, it is possible that such appointments could have been completed during non-work hours. ECF No. 16-1 at 20; *see Cavalieri v. Comm'r of Soc. Sec.*, No. 17-CV-812, 2019 WL 2710110, at \*4 (W.D.N.Y. June 28, 2019) ("Plaintiff has not demonstrated she would need to miss an entire day of work for each doctor's visit, examination, or test . . . ."); *Robbins v. Saul*, No. 18-CV-6592, 2020 WL 1445854, at \*4 (W.D.N.Y. Mar. 25, 2020) ("The record does not indicate . . . that any of the office visits . . . resulted in her missing any work, let alone a 'full day' of work." (collecting cases)).

In response to the Commissioner's argument, Plaintiff claims that the ALJ failed to adequately develop the record to show what amount of time constitutes an absence from work. ECF No. 21 at 8–9. Plaintiff fails to provide any authority that the ALJ was required to undertake that burden. Even if such an obligation existed, Plaintiff has failed to provide evidence that her appointments would result in *any* missed work time.[4] Without that connection, the precise definition of an absence is irrelevant.[5] Accordingly, Plaintiff has not demonstrated that the ALJ committed any error in considering Plaintiff's medical appointments.

---

[4] For instance, Plaintiff has not cited to a medical opinion finding she would need to miss work to attend her medical appointments. *Cf. Susan B. v. Comm'r of Soc. Sec.*, No. 19-CV-80, 2021 WL 248752, at \*11 (D. Vt. Jan. 26, 2021) ("Plaintiff's attendance at medical appointments is consistent with Dr. Baker's assessment that she would need to miss several days of work per month, in part to attend those appointments.").

[5] Plaintiff places significant weight on the ALJ's statement that Plaintiff had "relatively infrequent appointments for treatment for the alleged symptoms." Tr. 20; ECF No. 9-1 at 24; ECF No. 21 at 9. It is unclear if all of the appointments cited by Plaintiff involved treatment for her alleged symptoms, but even if the ALJ's statement was incorrect, the Court declines to invalidate the ALJ's decision based solely on a single misstatement.

**CONCLUSION**

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 16, is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings, ECF No. 9, is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 10, 2021
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court